UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:04CR58-PPS |
| vs. | ) | and |
| | ) | No. 2:13CV389-PPS |
| CHARLES STEELE, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Charles Steele participated in the armed robbery of a restaurant in Hammond, Indiana back in 2004. He was charged with the robbery in state court and received a 15 year sentence. He was then charged in this court with being a felon in possession of firearms in violation of both 18 U.S.C. §922(g)(1) and the Armed Career Criminal Act, 18 U.S.C. §924(e)(1). Count 1 charged Steele with the possession of the firearms used in the robbery, and Count 2 charged him with possession of shotguns he admitted to keeping in a storage unit from which they were recovered. Steele pled guilty to Count 2 and in his plea agreement stipulated to a binding sentence of 15 years, the statutory mandatory minimum term of imprisonment applicable under the ACCA. [DE 11 at 4.]

Steele now seeks to set aside his federal sentence under 28 U.S.C. §2255. Because the motion is filed almost eight years after the judgment, Steele has also filed a motion to equitably toll the one-year statute of limitations ordinarily applicable to §2255 motions. Because I conclude that Steele is not entitled to relief in any event, I will decide the case on that basis rather than on the untimeliness of the motion.

**<u>Ground One — Concurrent Sentences under U.S.S.G. §5G1.3(b)</u>**

Steele filed his §2255 *pro se*, raising two related grounds for relief. In Ground One, Steele argues that his attorney rendered ineffective assistance of counsel when he failed to advocate for a federal sentence that would run concurrent with his state robbery sentence, applying §5G1.3(b) of the 2005 U.S. Sentencing Guidelines in effect at the time of his sentencing in December 2005. Section 5G1.3(b) then provided that where a prison term resulted from another offense that is "relevant conduct" to the instant offense of conviction *and* was "the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)" of the Guidelines, then the court should take steps to run the two related sentences concurrently.

Ground One must be denied because Steele signed a plea agreement containing a waiver of his right to bring this kind of claim. A voluntary and knowing waiver of the right to appeal or bring post-conviction challenges to a conviction or sentence is valid and must be enforced. *United States v. Malone*, 815 F.3d 367, 370 (7th Cir. 2016); *United States v. Lacy*, 813 F.3d 654, 656 (7th Cir. 2016). Within his plea agreement, Steele agreed to:

> expressly waive [his] right to appeal or to contest [his] conviction and [his] sentence imposed or the manner in which [his] conviction or [his] sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation....

[DE 11 at 4.] Thus, Steele waived his right to bring this sort of ineffective assistance of counsel claim, which does not relate directly to the appeal waiver itself.

Steele strains to associate the concurrent sentences issue with the negotiation of the plea waiver, but the effort is entirely unsuccessful. [DE 43 at 2-3.] On its face, Steele's argument about concurrent sentences has nothing to do with waiving his right to appeal and to bring post-conviction motions. Furthermore, to the extent Steele claims that in the negotiation of the plea and the appeal waiver specifically, his counsel was to have addressed concurrent sentences, such an assertion is belied and contradicted by Steele's responses at the change of plea hearing.

The plea agreement contains no provisions concerning concurrent federal and state sentences. Yet, answering me under oath, Steele stated that he was "fully satisfied with the counsel, representation, and advice given to [him] in this case by Mr. Martin." [DE 39 at 7.] He also acknowledged that his willingness to plead guilty was the result of discussions memorialized in the plea agreement. [*Id*.] Steele agreed that his counsel had reviewed the agreement with him in detail and answered any questions Steele had about the contents, terms and ramifications of the plea agreement. [*Id*. at 8-9.] He further represented to me that the plea agreement contained the entirety of his understanding with the government, and that no one had made any "other or different promise or assurance...of any kind in an effort to induce" Steele's plea of guilty. [*Id*. at 17.] In light of these many representations made to me under oath, Steele cannot credibly claim that he negotiated the appeal waiver in reliance upon any understanding

3

or expectation about receiving a federal sentence to run concurrent with his state sentence.

The waiver was reviewed at his change of plea hearing, and Steele acknowledged that he understood it and agreed to it knowingly and voluntarily. [DE 39 at 14-15.] Steele was fully advised that the Sentencing Guidelines were no longer mandatory. [*Id*. at 21.] Finally, Steele denied that anyone, including his own attorney, had "done anything or made any prediction or promise to [him] other than what's contained in the plea agreement as to precisely what [his] sentence [would] be." [*Id*. at 22.] The waiver is valid and enforceable, and Steele waived his right to bring this ineffective assistance claim.

But the claim has no merit anyway. This is because Steele was not entitled to concurrent sentencing under then-applicable §5G1.3(b). Steele cites two cases in support of his argument that he should have benefitted at sentencing from §5G1.3(b) — *United States v. Ross*, 219 F.3d 592, 594 (7th Cir. 2000), and *Kiefer v. United States*, 20 F.3d 874, 876-77 (7th Cir. 1994). Both of these cases are distinguishable in several ways, the most obviously fatal being that they pre-date the 2003 change to §5G1.3(b)'s language that was applicable to Steele.

Prior to the 2003 amendment, the concurrent sentencing provision applied where the other term of imprisonment was for an offense that had "been fully taken into account in the determination of the offense level for the instant offense." U.S.S.G. §5G1.3(b) (2002). By the time of Steele's sentencing, the standard was more specific and

stringent, and his case did not meet its requirements. Steele's federal sentence did not qualify for concurrent treatment under §5G1.3(b) because his offense level was not increased "under Chapter Two (Offense Conduct) or Chapter Three (Adjustments)" of the Guidelines. *Id*. Rather, as an Armed Career Criminal, Steele's offense level was determined by applying the career offender provisions of Chapter Four. Neither Chapter Two nor Chapter Three of the Guidelines factored into his offense level. As a result, Steele's ultimate offense level was calculated on the basis of the provisions of the career offender guidelines of Chapter Four, not Chapters Two or Three. [PSR, p.8.] And this means one of the two requirements for concurrent sentencing under the then-existing version of §5G1.3(b) was not met.

In sum, the appeal waiver knocks out Steele's first claim. But even if I were to consider it on the merits, he still cannot prevail. Relief on Ground One is therefore denied.

**Ground Two — Failure to Appeal Concurrent Sentences Issue**

In Ground Two, Steele contends that his counsel was ineffective because he failed to file a notice of appeal as Steele requested. Steele wanted to argue on appeal that it was an error for him not to be credited at sentencing with "his undischarged state sentence. . ." [DE 27 at 19.] This is basically a rehash of Ground One. And as I noted above, Steele's claim to such concurrent credit doesn't hold water under the applicable Guideline. But there is another problem with Steele's argument. It once again runs headlong into the appeal waiver that he agreed to in the plea agreement.

5

It is true that, ordinarily, an attorney's failure to file a notice of appeal if requested by his client to do so is presumptively prejudicial, and that the probability of success on appeal is irrelevant to the evaluation of this sort of ineffective assistance claim. *See Vinyard v. United States*, 804 F.3d 1218, 1228 (7th Cir. 2015). But this is only true in the absence of an appeal waiver. When a defendant signs a plea agreement containing an appeal waiver, the law is different. The Seventh Circuit has held that "once a defendant has knowingly and voluntarily waived his right to appeal both in a plea agreement and in court under Rule 11(b), the Sixth Amendment does not require an attorney to disregard the waiver by complying with the defendant's request to file an appeal." *Solano v. United States*, 812 F.3d 573, 577 (7th Cir. 2016), citing *Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008).

As discussed above in Ground One, Steele entered into a plea agreement with the government that contained an explicit appeal waiver. So whether or not I believe Steele's insistence that he directed his attorney to file a notice of appeal, "where there is an appeal waiver, the attorney can choose not to appeal, even though there has been a request." *Nunez*, 546 at 456. Ground Two's ineffective assistance of counsel claim is therefore defeated by the enforceable appeal waiver.

**Ground Three — Armed Career Criminal Classification**

Steele's Ground Three was filed in a supplemental amendment to his §2255 motion and it was filed by counsel who entered an appearance after the *pro se* motion asserting Grounds One and Two was fully briefed. Ground Three claims that Steele's

6

sentence under the Armed Career Criminal Act was "based on prior convictions which would only meet the definition of violent felonies if considered to be 'residual clause' offenses under §924(e)(2)(B)(ii)." [DE 55 at 1.] Section 924(e) prescribes a mandatory minimum of 15 years' imprisonment for a felon convicted of possession of a firearm under §922(g) who has three previous convictions for a serious drug offense or a violent felony. For purposes of this provision, "violent felony" is defined in §924(e)(2)(B) as a felony that:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*.

Last year, in *Johnson v. United States*, 135 S.Ct. 2551, 2557 (2015), the Supreme Court held that the italicized "otherwise involves conduct" clause of this definition, commonly referred to as the "residual clause" of the ACCA, is unconstitutionally vague and therefore void.

This year, in *Welch v. United States*, 136 S.Ct. 1257, 1265 (2016), the Supreme Court held that the *Johnson* decision announced a new substantive rule that has retroactive effect in cases on collateral review. *Johnson* therefore triggered a new one-year statute of limitations to bring claims under §2255(f)(3). Presumably for that reason, and to avoid a question of timeliness, counsel has attempted to frame Ground Three in Steele's petition as a *Johnson* claim. If Steele was treated as an Armed Career Criminal based on prior convictions that qualified only under the voided residual clause, he might be entitled to relief based on *Johnson*. But that is not Steele's situation.

7

Steele's first argument is that I should be limited to considering only the three convictions referenced in his plea agreement — a 1991 escape conviction and two burglaries in 1993 and 1990. [DE 11 at 5.] He argues that these three offenses could only have been ACCA violent felonies under the now-invalidated residual clause. In that regard, Steele argues that "[b]ecause such a determination would increase, and did increase, the applicable mandatory minimum, those determinations must be submitted to a jury or admitted by the defendant." [DE 57 at 2, citing *Alleyne v. United States*, 133 S.Ct. 2151 (2013).] But *Alleyne* expressly did not revisit *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), in which the Supreme Court "recognized a narrow exception to this general rule for the fact of a prior conviction." *Alleyne*, 133 S.Ct. at 2160, n.1. So Steele's first argument is a nonstarter, and I agree with the government that all of Steele's prior convictions — there were 8 listed in the indictment and admitted to at the change of plea hearing — can be considered in determining whether he qualified as an Armed Career Criminal.

The next question is whether Steele's burglary convictions are qualifying convictions under the ACCA. At his plea hearing, Steele acknowledged five prior felony burglary convictions from 1983, 1986, 1990 and two in 1991, as well as a reckless homicide conviction in 1991, the 1991 escape conviction and an attempted burglary in 1991. [DE 39 at 25, 26.] The presentence report (without objection from Steele) treated the burglaries and the reckless homicide as violent felonies under §924(e). [PSR, ¶33.]

8

Although one of my colleagues has recently held to the contrary,[1] I conclude that Steele's Indiana burglary convictions qualify as ACCA violent felonies under the enumerated offenses clause of §924(e)(2)(B)(ii). Because they do, the invalidation of the residual clause has no bearing on Steele's designation as an Armed Career Criminal. For this reason, Ground Three is really not a claim based on *Johnson* and therefore the claim is probably untimely. But because the government has not made an argument that Steele's claim is untimely and has waived opposition to Ground Three on the basis of the appeal waiver (*see* DE 56 at 6), I must decide the claim on the merits.

Section 924(e)(2)(B)(ii) lists burglary, arson and extortion as violent felonies for purposes of the ACCA. The seminal case on the interpretation of an ACCA "burglary" is *Taylor v. United States*, 495 U.S. 575 (1990), in which the Supreme Court held that "a person has been convicted of burglary for purposes of a §924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id*. at 599. The Indiana statute underlying each of Steele's burglary convictions defined the crime as "break[ing] and enter[ing] the building or structure of another person, with intent to commit a felony in it." Ind. Code § 35-43-2-1.1 (1982; 1999). This statutory definition is a near replica of the generic offense as defined in *Taylor*, except that Indiana requires breaking and entering with the

---

[1] *See United States v. Handshoe*, Cause No. 1:15CR35-TLS, 2016 WL 4453242 (N.D.Ind. Aug. 24, 2016) (Springmann, J.).

intent to commit a "felony" rather than any (possibly lesser) crime. As *Taylor* teaches, "[i]f the state statute is narrower than the generic view,…there is no problem, because the conviction necessarily implies that the defendant has been found guilty of all the elements of generic burglary." *Taylor*, 495 U.S. at 599.

Steele urges that Indiana burglary is broader than generic burglary, and so does not qualify as an ACCA violent felony, because Indiana courts have interpreted the offense to encompass unlawful entries into fences, citing, for example, *Gray v. Indiana*, 797 N.E.2d 333, 335 (Ind.App. 2003) and *McCovens v. Indiana*, 539 N.E.2d 26, 29 (Ind. 1989). In *McCovens*, the Indiana Supreme Court "held that the fence surrounding the business was a 'structure' under the burglary statute because its purpose was to protect the property on the premises." *Gray*, 797 N.E2d at 335, citing *McCovens*, 539 N.E.2d at 29. But as the government argues, the Indiana courts' reasoning shows that a fenced area is "still a fixed-in-place 'structure,' not a mobile boat or automobile of the kind that concerned the Supreme Court in *Taylor*." [DE 56 at 8, citing *Taylor*, 495 U.S. at 598-99.] I agree.

The generic burglary definition given in *Taylor* requires unlawful or unprivileged entry into "a building or structure." *Id.* at 599. A fence is a structure. The word "structure" in *Taylor*'s definition must mean something other than "building" or the Supreme Court would not have used both terms. A typical definition of the word "fence" contains the word "structure," such as from Merriam-Webster's online dictionary: "a structure like a wall built outdoors usually of wood or metal that

10

separates two areas or prevents people or animals from entering or leaving." *See Fence,* MERRIAM-WEBSTER (Sept. 28, 2016) http://www.merriam-webster.com/dictionary/ fence?utm_campaign=sd&utm_medium=serp&utm_source=jsonld.

I also find Steele's argument unpersuasive for a more basic reason – that *Taylor* tells us the determination of generic burglary is based on the *statutory definition*, rather than any case law interpretation of its elements by the state courts. "We think the only plausible interpretation of §924(e)(2)(B)(ii) is that, like the rest of the enhancement statute, it generally requires the trial court to look only to the fact of conviction and the statutory definition of the prior offense." *Taylor*, 495 U.S. at 602. In Mr. Taylor's case, the record did not clearly indicate which of seven different Missouri statutes his second-degree burglary convictions were based on. *Id*. at 578, n.1. To the extent *Taylor* was concerned that the Missouri convictions might not qualify as generic burglary, it was because some of the possibly applicable *statutes* might *define* burglary more broadly, as in the one including entry of a "booth, tent, boat, or railroad car." *Id*. at 602 and 578, n.1, citing Mo.Rev.Stat. §560.070. The Indiana burglary statute contains no such additional non-generic language. If the categorical approach does not permit the sentencing court to look beyond the statutory definition of the offense, I don't see any basis for looking to state case law interpreting the dimensions of the statutory language.

The Supreme Court's most recent visit to this territory does not counsel or require otherwise. This summer in *Mathis v. United States*, 136 S.Ct. 2243 (2016), the Court held that a statute that has alternative means of satisfying a single element

11

doesn't trigger the application of the modified categorical approach to the generic offense question, and doesn't widen the scope of documents that can be considered in determining the offense of conviction. As the Supreme Court says in *Mathis*, when a statute sets out a single indivisible set of elements (as the parties here agree Indiana's burglary statute does), the sentencing court's task is to merely "line[] up that crime's elements alongside those of the generic offense and sees if they match." *Id*. at 2248. The match between the Indiana statutory definition and the generic burglary definition given in *Taylor* could not be any closer and that simple analysis ends the debate, as I see it.

What's more, there is a hint in Seventh Circuit case law that supports this conclusion. In *United States v. Vogt*, 588 Fed.Appx. 497 (7th Cir. 2015), the Court granted an *Anders* motion to withdraw and dismissed a direct appeal. In determining that Vogt's challenge to the application of the ACCA based on his three Indiana burglaries would be frivolous, the Seventh Circuit quotes both Indiana's burglary statute and the *Taylor* definition of generic burglary, and expresses the unremarkable conclusion that "Indiana's statute…fits that definition." *Vogt*, 588 Fed.Appx. at 498. That straight-forward approach is my analysis as well. The Seventh Circuit has similarly concluded that Illinois' current residential burglary statute, violated when a defendant "knowingly and without authority enters…within the dwelling place of another…with the intent to commit therein a felony or theft," satisfies the *Taylor* definition of generic burglary. *Dawkins v. United States*, 809 F.3d 953, 954 (7th Cir. 2016) (per curiam).

The decisions of other Courts of Appeals cited by Steele are distinguishable because they involve state *statutory definitions* including additional broadening terminology, not state case law interpretations. In *United States v. Wenner*, 351 F.3d 969, 972 (9th Cir. 2003), the Ninth Circuit examines the state of Washington's burglary statute, and finds that it does not define a generic burglary because its statutory definitions encompass burglary of fenced areas, railway cars and cargo containers, which the court believed not to be "buildings or structures under federal law." *Id*. at 972-73. Similarly, in *United States v. Ramirez*, 708 F.3d 295 (1st Cir. 2013), the First Circuit considers Florida's statutory scheme, under which burglary of a dwelling could be of a "building or conveyance of any kind…whether such building or conveyance is temporary or permanent, mobile or immobile, which has a roof over it and is designed to be occupied by people lodging therein at night, together with the curtilage thereof." *Id*. at 300, quoting Fla. Stat. §810.011(3). Florida's offense was found not to qualify as a "burglary of a dwelling" under §4B1.2(a)(2) of the Sentencing Guidelines (as it then read) because Florida's definitions did not require that the curtilage be "an enclosed space used or designed for human habitation." *Id*. at 304.

In both *Wenner* and *Ramirez*, what was subject to scrutiny was statutory language. Further, in both cases the statutes' definitions encompassed moving vehicles, which *Taylor* clearly suggests are outside the boundaries of generic burglary. *Taylor*, 495 U.S. at 599. Recently the Seventh Circuit similarly found that certain Illinois burglary statutes from the 1970's did not qualify as generic burglary because their

13

location definition encompassed vehicles. *United States v. Haney*, No. 16-1513, 2016 WL 6298695, *2 (7th Cir. Oct. 27, 2016).[2] By contrast, *Taylor* does not rule out fences as "structures" within the meaning of the generic definition.

With all due respect to Judge Springmann's contrary view, I conclude, applying the categorical approach of *Taylor*, that Indiana's definition of burglary meets the elements of generic burglary and is an enumerated "violent felony" pursuant to §924(e)(2)(B)(ii). Charles Steele was properly treated as an Armed Career Criminal, and Ground Three of his §2255 motion demonstrates no right to relief from his stipulated mandatory minimum 15-year sentence.

## **Conclusion**

Steele's motion under §2255 will be denied. I must also consider whether to grant Steele a certificate of appealability on any of his claims. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." RULES GOVERNING SECTION 2255 PROCEEDINGS 11(a). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To obtain a certificate of appealability, Steele must show that reasonable jurists could debate whether his petition should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). I relied on both Steele's appeal waiver and the merits to reject Grounds One and

---

[2] *Haney* did not reconsider the court's decision in *Dawkins* that Illinois' current residential burglary statute satisfies the *Taylor* test. *Id.* at n.2.

14

Two, and I do not believe reasonable jurists could debate those determinations. A certificate of appealability will be denied as to them.

As for Ground Three, I conclude that reasonable jurists could debate the resolution of the issue, given that Judge Springmann and I have disagreed on the question at the heart of the matter. So I will grant a certificate of appealability on Ground Three.

**ACCORDINGLY:**

Charles Steele's motion to equitably toll the statute of limitations for his filings under 28 U.S.C. §2255 [DE 25] is DENIED WITHOUT PREJUDICE.

Steele's motion to vacate, set aside or correct his sentence under §2255 [DE 26, 55] is DENIED.

A certificate of appealability is DENIED as to Grounds One and Two, but GRANTED as to Ground Three.

**SO ORDERED** this 4th day of November, 2016.

　　　　　　　　　　　　　　　　　　/s/ Philip P. Simon
　　　　　　　　　　　　　　　　**Chief Judge, U.S. District Court**