UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 2:04CR58-PPS |
| | ) |
| CHARLES STEELE, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Charles Steele participated in the armed robbery of Bob's Shrimp, a restaurant in Hammond, Indiana, in May of 2004. Steele faced criminal charges in both state and federal courts. He was sentenced to 15 years in the Indiana Department of Corrections on a robbery charge. In this court, Steele pled guilty to a charge of being a felon unlawfully in possession of firearms in violation of both 18 U.S.C. §922(g)(1) and the Armed Career Criminal Act, 18 U.S.C. §924(e)(1). I sentenced Steele to 15 years, the mandatory statutory minimum term of imprisonment applicable under the ACCA. According to the Federal Bureau of Prisons' online inmate locator, Steele's projected release date is December 15, 2025.

The case is again before me because Steele wrote a letter from the federal prison in Glenville, West Virginia, inquiring about how to apply to the court for consideration of what is commonly known as compassionate release, that is, an early release from prison because of the COVID-19 pandemic. [DE 70.] Such a request is made under 18 U.S.C. §3582(c)(1)(A)(i), which, as amended by Section 603 of the First Step Act, authorizes a

defendant to seek a modification of an imposed term of imprisonment upon a showing that "extraordinary and compelling reasons warrant such a reduction." After the Federal Community Defenders office declined representation, Steele has proceeded *pro se* with his request for relief.

The record on the motion consists of Steele's original letter [DE 70], his later-filed motion for compassionate release [DE 74], Steele's letter filed November 23 [DE 75], the government's response [DE 76], and Steele's reply or "traverse" filed December 18 [DE 80]. Upon consideration of all these materials, and the applicable standard of §3582(c)(1)(A), I will deny Steele's request for an early release from imprisonment.

The statute requires a defendant to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." §3582(c)(1)(A). Steele represents in his original letter that more than 45 days prior he wrote a letter to the warden requesting compassionate release but had received no reply. [DE 70 at 1.] With his subsequently filed motion, Steele submits a handwritten document addressed to "Gilmer F.C.I. Administration c/o Warden Hudgins," dated September 9, 2020, that appears to be his request for compassionate release. [DE 74 at 20-22.] September 9 was only 36 days prior to Steele's letter dated October 15, in which he claimed 45 days had passed, but nonetheless exceeds the "lapse of 30 days" without a response that satisfies the exhaustion requirement of §3582(c)(1)(A).

Steele's motion (filed 3 weeks after his initial letter to the court) contains no reference to administrative exhaustion or to the exhibit it includes pertinent to the issue.

2

Perhaps that is why the government overlooks the exhibit and asserts that Steele has provided no documentation supporting his claim of exhaustion. [DE 76 at 6.] In any event, the government's attempt to dispute that Steele has exhausted administrative remedies is weak. It is based on a hearsay statement by an unidentified prison representative, namely the Assistant United States Attorney claiming that he "contacted counsel for the BOP and was told that the defendant did not file a request for compassionate release." [DE 76 at 6.] In support, the government cites Exhibit 1, a collection of 6 pages labeled "Administrative Remedy Generalized Retrieval." [DE 78-1.]

No explanation is offered of the exhibit, which appears to be a computer-generated report listing ten administrative requests made by Steele at FCI Gilmer since 2013. Four are dated in 2020. These are variously described as "wants MRI for shoulder issue," "wants weekly library book exchange," "states sentence comp is incorrect," and "c/o not receiving med equip – shoe insert, brace." [DE 78-1 at 5, 6.] Admittedly, these synopses don't reflect a request for compassionate release, but the government has provided an insufficient basis for me to conclude that the exhibit is an exhaustive catalogue of all administrative requests by Steele and would include a compassionate release petition if one had been made.

In his reply, Steele vigorously defends his claim of administrative exhaustion, providing a narrative supporting his submission of the request for compassionate release under the direction of a prison counselor, Mrs. Putnam, and his payment via his prison account for the photocopy he later submitted to the court. [DE 80 at 1-2.] On this record,

3

Steele makes a persuasive showing that he has met the administrative exhaustion requirement, and the government has failed to persuasively rebut it. I will not deny Steele's request for compassionate release for failure to comply with the exhaustion requirement of §3582(c)(1)(A).

Section 3582(c)(1)(A) next requires consideration of the sentencing factors set forth in §3553(a), and a determination whether the defendant presents "extraordinary and compelling reasons" that warrant a reduction of the sentence previously imposed. §3582(c)(1)(A)(i). Steele's motion focuses primarily on discussion of §3553(a) factors, but also argues that he has risk factors that elevate the dangers of COVID-19, namely high blood pressure, high cholesterol and a history of smoking. [DE 74 at 2.] Steele notes that, between the federal and state sentences, he has been incarcerated since 2004 that no victims were physically harmed during the robbery, and that he has no unresolved detainer pending against him should he be released. [*Id.* at 3.] Steele reports good behavior in prison (only one infraction in his 8 years at FCI Gilmer), his participation in many worthwhile education courses offered at FCI Gilmer, and his Dean's List completion of college course work through Ball State University's School of Extended Education while incarcerated in the Indiana State Prison. [*Id.*]

When I sentenced Steele for the firearm conviction in this case, he qualified as an Armed Career Criminal in light of five prior burglary convictions. [PSR, ¶¶50-61.] Steele has also been convicted of reckless homicide in connection with one middle-of-the-night burglary, because while fleeing police in a car, he crashed into another vehicle,

killing its occupant. [*Id*. at ¶¶60-61.] Despite Steele's significant criminal history and the seriousness of the armed robbery conduct that underlies Steele's felon-in-possession charge, I imposed the statutory mandatory minimum sentence of 15 years. Although Steele's efforts to improve himself in prison are commendable, Steele does not persuade me that granting him release now, with one-third of that sentence left to serve, would serve the statutory purposes of reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence and protecting the public.

Steele's motion makes only general allegations about a "serious breakout" of COVID-19 at the prison. [*Id*. at 6.] In his reply, Steele is more specific, alleging that the number of individual infected increased from 8 to 140, even as the BOP continued to claim there were only 8 people with COVID. [DE 80 at 3.] Steele represents that in the last two weeks, 3 additional housing units have been locked down because of COVID outbreaks, that inmates are tested only when they complain of symptoms, and that inmates who test positive are locked in their cell. [*Id*. at 6-7.] According to Steele, FCI Gilmer is not following the pandemic protocols posted online by the Bureau of Prisons. None of Steele's filings are sworn declarations or submitted under penalty of perjury, and his allegations about the prison's COVID-19 conditions are anecdotal and unsupported by evidence. The government has no opportunity to respond to such specific allegations made for the first time in Steele's reply.

5

Steele has clearly made an attempt to address all the possible areas of relevance to my determination, as I outlined for him in my October 28 order. [DE 73 at 2.] I simply do not find the circumstances he invokes to constitute extraordinary and compelling reasons warranting a reduction of his term of imprisonment by nearly one-third.

No specialized knowledge of epidemiology is required to understand that the management of a highly infectious disease with an incubation period of up to 14 days and the possibility of entirely asymptomatic carriers poses an enormous challenge for the Bureau of Prisons. Prison facilities are not designed for social distancing and the BOP's ability to control inmate behavior so as to reduce transmission is extremely limited. Based only on the anecdotal information Steele has provided, I am not in a position to determine that the prison's handling of the COVID-19 outbreak is unreasonably poor or exposes Steele to extraordinary risk.

Steele cites personal health factors, namely high blood pressure, high cholesterol and a history of smoking. [DE 74 at 2.] These are common medical concerns and insufficient, without more, to meet the statutory standard. "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from...chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-3 (E.D.Cal. Feb. 12, 2020), quoting *US v. Weidenhamer*, No. CR-16-01072-001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019). The government points out

6

that Steele's prison medical records reflect that he is treated with medication for both his hypertension and his high cholesterol. [DE 76 at 2, citing DE 78-2 at 5, 10, 22, 24, 47-48.] Steele fails to demonstrate that his underlying medical issues, though currently controlled, place him at a higher risk for severe illness if he becomes infected with COVID-19.

The COVID-19 pandemic is a scourge that has imposed great hardship and suffering on millions of people across the world. But it does not warrant the wholesale emptying of all prisons and jails. The special authority granted to sentencing judges by the recent amendment to §3582(c)(1)(A) is quite narrow, and understandably so, because it comes at the cost of truncating the carefully measured term of imprisonment previously imposed, at the expense of all the sentencing factors and goals weighed in determining that sentence. There are many facts and factors about the COVID-19 pandemic that can justly be called "extraordinary and compelling." But the risk of infection, or even an actual infection with the virus, is not necessarily enough to meet that standard given the prevalence of the coronavirus generally at this time. The risks Steele now faces with respect to COVID-19 are not shown to present "extraordinary and compelling reasons" warranting a reduction in his sentence.

**ACCORDINGLY:**

Charles Steele's letter filed October 19, 2020 [DE 70] is construed as a motion for compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A)(i). That motion, and Steele's later filed motion for compassionate release [DE 74] are DENIED.

The Clerk shall provide a copy of this order to Steele at the institutional address from which his letter was sent.

**SO ORDERED** this 12th day of January , 2021.

/s/ Philip P. Simon
**UNITED STATES DISTRICT JUDGE**